# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MELODI SORGE,

   Plaintiff,

v.                   Civ. No. 16-64 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

   Defendant.

## <u>ORDER</u>

   THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing With Supporting Memorandum" ("Motion"), filed on September 2, 2016. ECF No. 18. The Commissioner responded on November 10, 2016. ECF No. 22. Plaintiff filed no reply. Having meticulously reviewed the entire record and the parties' briefing, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I.  BACKGROUND

   Plaintiff was born on July 26, 1977, in Tucumcari, New Mexico. Administrative R. ("AR") 156-57. She obtained a General Educational Development ("GED") diploma at the age of seventeen and worked intermittently thereafter from 1995 to 2009. AR 164-67. Plaintiff's work history was interrupted between 2006 and 2008, when she was incarcerated for several convictions, including forgery. AR 49, 50. *See* Pl.'s Mot. 23, ECF No. 18; Def.'s Resp. 2, ECF No. 22. Plaintiff returned to employment following her release in 2008, but left in the summer of 2009 as she reached the final months of pregnancy. AR 41, 191.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on August 14, 2011, alleging disability beginning on February 5, 2010, due to bipolar disorder. AR 187. She also applied for Supplemental Security Income ("SSI") on August 21, 2011. AR 156-63. The Social Security Administration ("SSA") denied Plaintiff's applications initially on February 24, 2012 [AR 82, 94-96], and upon reconsideration on October 19, 2012. AR 92. At her request, Plaintiff received a *de novo* hearing before ALJ Barry O'Melinn on February 11, 2014, at which Plaintiff, her attorney, and a vocational expert ("VE") appeared. AR 35-71. On April 14, 2014, the ALJ issued his decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 15-29. Plaintiff appealed to the SSA Appeals Council, but it declined review on November 24, 2015. AR 1-3. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2016).

Plaintiff timely filed her appeal in this Court on January 27, 2016. ECF No. 1.

## II.     PLAINTIFF'S CLAIMS

Plaintiff advances five grounds for relief. First, she argues that the ALJ's mental disability analysis is fraught with legal error. Pl.'s Mot. 12-14. Second, she contends that the ALJ improperly discounted the opinions of two consultative psychological examiners. *Id.* at 14-15. Third, Plaintiff alleges that the ALJ impermissibly failed to incorporate certain moderate limitations assessed by non-examining consulting psychologists into her residual functional capacity ("RFC"). *Id.* at 16-17. Fourth, Plaintiff claims that the ALJ erred in his analysis of her treating physician's opinion. *Id.* at 17-20. Lastly, she argues that the ALJ's credibility assessment is unsupported by substantial evidence. *Id.* at 20-24.

## III.    APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*,

814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    THE ALJ'S DECISION

The ALJ issued his decision on April 14, 2014. AR 12. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 14, 2011. AR 17. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) anxiety disorder, (2) affective disorder, and (3) bilateral carpal tunnel syndrome. AR 13.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17-19. This finding included an analysis of Plaintiff's mental impairments, which the ALJ found did not meet or medically equal the criteria of Listing Sections 12.04 (affective disorders) or 12.06 (anxiety-related disorders). AR 47-49.

The ALJ found that the paragraph B criteria of Listings 12.04 and 12.06[2] were not met "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or

---

[2] Paragraph B of Listings 12.04 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 18. He then explained his reasoning regarding paragraph B's four subparts, beginning with activities of daily living. There, the ALJ found Plaintiff to have only a mild restriction. The ALJ looked to Plaintiff's own function statement, noting that she mentioned having "no problems with her personal care, such as bathing and getting dressed . . . [and] she took care of her 2 daughters." AR 18 (citing AR 223-34). Furthermore, Plaintiff "stated that she could prepare her own meals on a daily basis, and do household chores, such as cleaning her house, doing laundry, dusting, and vacuuming." AR 18 (citing AR 224). As to social functioning, the ALJ found Plaintiff to suffer moderate difficulties. By Plaintiff's account, "she had problems getting along with family, friends and neighbors [and] did not interact with people because she had a fear of people and what they were going to do to hurt her." AR 18 (citing AR 225). The ALJ noted that these same apprehensions also precluded Plaintiff from participating in social activities. AR 18. Next, the ALJ turned to Plaintiff's concentration, persistence, and pace, and again found Plaintiff to have moderate difficulties. The ALJ based this on Plaintiff's statement "that she could pay attention for 30 minutes and she did not finish what she started." AR 18 (citing AR 225). The ALJ concluded his paragraph B discussion by finding that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." AR 18.

The ALJ similarly found that the evidence in Plaintiff's case "fails to establish the presence of the 'paragraph C' criteria."[3] AR 18. The ALJ based his finding on the fact that

---

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(B), 12.06(B) (2014). On March 27, 2017, the SSA significantly altered the language of these listings.

[3] Paragraph C of Listings 12.04 and 12.06 (which was also identical at the time of the ALJ's decision in both) describes mental disorders that are serious and persistent. To qualify under this paragraph in either Listing, a claimant must have a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both:
    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

Plaintiff "has not had repeated episodes of decompensation of an extended duration," and the absence of any evidence in the record to show she would decompensate if she experienced minimal increases in mental demands or a change in environment. AR 18. Additionally, the ALJ noted Plaintiff has been able to function outside of a highly supportive living arrangement. AR 18.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 19-27. "After careful consideration of the record," the ALJ determined that "[Plaintiff] has the residual functional capacity to perform light work" with the following limitations:

> occasional climbing of ramps and stairs and crawling; never climbing of ropes, ladders[,] or scaffolds; frequent handling and fingering, bilaterally. [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers and work situations; deal with routine changes in work setting, maintain concentration, persistence[,] and pace for up to and including 2 hours at a time with normal breaks throughout the work day. She is suitable for jobs involving work primarily with things and not people.

AR 19.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ made an adverse credibility finding against Plaintiff. The ALJ did so by finding that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects" of her symptoms were "not entirely credible." AR 21. He recounted Plaintiff's self-described allegations of bipolar disorder, which she claimed "affected her ability to complete tasks and get along with others," while also preventing her from leaving the house, as she could not trust those she met outside of

---

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life

*Id.* §§ 12.04(C), 12.06(C).

the house. AR 19. "Despite these allegations," the ALJ opined, Plaintiff "[takes] care of her 2 daughters" and had "no problems with her personal care, such as bathing or getting dressed." AR 19-20. The ALJ also recalled Plaintiff's testimony that "she had left her job as a cashier at Frontier . . . shortly before giving birth to her child." AR 20. This led the ALJ to reason that Plaintiff "was able to perform relatively demanding work and that she most likely stopped working for reasons not related to her allegedly disabling impairments." AR 20. In the ALJ's estimation, these activities of daily living were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens her credibility." AR 20.

The ALJ also evaluated the third party statements of Plaintiff's parole officer, fiancée, and friend as part of the credibility analysis. He first reviewed the statement of Plaintiff's parole officer, Jennifer Abers, who in 2008 wrote that Plaintiff "had been in full compliance with her parole orders," including attending "all of her meetings" and maintaining "clean urinary analysis, counseling compliance, curfew compliance, and work compliance." AR 20 (citing AR 255). Next, the ALJ turned to Plaintiff's fiancée, Mariano Zamora, who completed a form entitled "Function Report – Adult – Third Party" on September 11, 2012. AR 213-20. Therein, the ALJ observed that Mr. Zamora "stated that [Plaintiff] had no problem taking care of her personal care, such as bathing and getting dressed." AR 20 (citing AR 214). The ALJ also noted that Mr. Zamora believed Plaintiff could: (1) prepare her own meals on a daily basis; (2) do some household chores, including cleaning, laundry, and cooking; (3) use public transportation and go shopping; and (4) follow both written and spoken instructions well. AR 20. Lastly, the ALJ discussed the testimony of Plaintiff's friend, Erma Sedillo. AR 21. Ms. Sedillo testified before the ALJ that she had known Plaintiff for seven years, and saw her three to four times per month. As part of that friendship, Ms. Sedillo testified that she took Plaintiff shopping and assisted

Plaintiff in obtaining fully subsidized housing. Although the ALJ noted that Ms. Sedillo felt Plaintiff's "symptoms have gotten worse" and that Plaintiff "had bad panic and anxiety attacks," the ALJ discounted these statements, as he concluded they might be "colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges." AR 21. Collectively, the ALJ drew on these third-party statements to support his general finding that Plaintiff's "symptoms may not have been as serious as has been alleged with this application." AR 20.

The ALJ concluded his credibility findings with a comprehensive review of the rationale supporting his adverse finding. He explained that Plaintiff "was able to work as a condition of her parole until she gave birth to her child . . . [and] [t]here is no indication her condition worsened after this time." AR 21. The ALJ also highlighted that Plaintiff "has been convicted of forgery and passing bad checks . . . [which] damage[s] her credibility." AR 22. He reasoned that Plaintiff "has earned 70 college credits," which he believed to be "inconsistent with the very low testing reflected in her consultative exams," and at odds with her "quite articulate" description of her further ineligibility for federal Pell grants. AR 22. The ALJ similarly took exception to Plaintiff's claim of debilitating carpal tunnel syndrome, as she "has never had the recommended nerve conduction study," since she "missed her f[ir]st appointment" and "was too busy to wait" for her second appointment. AR 22. The ALJ felt that this, combined with "the fact she never rescheduled" the appointment, undermined Plaintiff's "credibility as a whole." AR 22. Ultimately, the ALJ found that the aggregate facts "undermine [Plaintiff's] credibility and compel[ ] the conclusion that her lack of work owes to her criminal history, lack of job skills[,] and the fact she must care for her young children, as opposed to any reason related to disability." AR 22. Moreover, he found that Plaintiff's lack of credibility "impacts the value of

various medical source opinions in the record, as these provide[r]s relied at least in part on [Plaintiff's] reporting."  AR 22.

After recognizing that Plaintiff's reporting could impact the medical opinions of record, the ALJ began to evaluate each opinion in turn.  Specifically, the ALJ weighed five separate medical opinions - one from Plaintiff's treating psychologist, two from consultative examiners, and two from non-examining state agency consultants.

*Dr. Rick Wilson, Ph.D., M.D.*

The ALJ completely discounted the opinion of Plaintiff's treating psychologist, Dr. Rick Wilson, Ph.D., M.D.  Dr. Wilson began treating Plaintiff on April 9, 2013, and saw her bi-monthly thereafter.  AR 26.  The ALJ remarked that on February 11, 2014, Dr. Wilson completed a mental medical source statement, wherein he ascribed numerous limitations to Plaintiff, including marked limitations in: (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods of time; (3) performing activities within a schedule; (4) maintaining regular attendance; and (5) being punctual within customary tolerances.  AR 27 (citing AR 343-44).  The ALJ also noted that Dr. Wilson assigned moderate limitations in Plaintiff's ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) remember detailed instructions; (4) interact with the general public; and (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  AR 27 (citing AR 343-44).[4]

Dr. Wilson also completed two additional checklists concerning Plaintiff's mental functions.  The first of these documented Dr. Wilson's assessment of Plaintiff's symptoms under

---

[4] The Court notes that Dr. Wilson also ascribed additional marked limitations in Plaintiff's ability to: (1) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (2) accept instructions and respond appropriately to supervisors; (3) travel in unfamiliar places or use public transportation; and (4) set realistic goals or make plans independently of others.  AR 343-44.

Listing 12.04 (affective disorders), while the second did the same for Listing 12.08 (anxiety-related disorders). *See* AR 345-46. On the first of these two worksheets, Dr. Wilson noted that Plaintiff:

> had a medically documented history of chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demand or change in the environment would be predicted to cause the individual to decompensate or a current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

AR 27 (citing AR 345). The ALJ considered these findings so suspect that he declined further discussion of the second worksheet. Instead, the ALJ communicated his sharp disagreement with Dr. Wilson's opinion, noting that Plaintiff "has never been hospitalized or experienced any episodes of decompensation." AR 27. Moreover, he highlighted that Plaintiff "takes care of her 2 children and she was not living [ ] outside a supportive living arrangement." AR 27. "Therefore," the ALJ concluded, "the opinion of Dr. Wilson is given no weight, due to the fact that his opinion contrasts sharply with other evidence in the record and with [Plaintiff's] demonstrated abilities." AR 27.

Yet, the ALJ's critique did not end there. To the contrary, the ALJ also stated that Dr. Wilson's opinion "suffers by virtue of the fact that the [d]octor relied at least in part on [Plaintiff's] unreliable reporting." AR 27. Even more notably, the ALJ reasoned that "Dr. Wilson's opinion [is] also entitled to no weight because the record[ ] does not contain his underlying treatment notes." AR 27. The ALJ went on to explain, "[t]he record indicates that [Plaintiff] refused to release her records. [Plaintiff's] attorney indicated at the hearing that he had consent from [Plaintiff] to release the records and would supply them. However, this has not

occurred." AR 27. These facts, and particularly the lack of Dr. Wilson's treatment notes, led the ALJ to find his opinion "of no value." AR 27.

*Dr. Louis Wynne, Ph.D.*

The ALJ assigned little weight to the opinion of consultative examining psychologist Dr. Louis Wynne, Ph.D. AR 25. Dr. Wynne examined Plaintiff on November 23, 2011, and observed that Plaintiff "evinced no unusual mannerisms . . . spoke clearly but softly . . . [and] there was no evidence of confusion, tangentiality, circumstanti[ality], or evasion." AR 25. Following his examination, Dr. Wynne diagnosed Plaintiff with depression, methamphetamine abuse in remission, cognitive disorder on a "rule out" basis, and cognitive impairment due to head injury. AR 25. He further determined that Plaintiff had a Global Assessment of Functioning Score ("GAF") score of 48.[5] AR 25. The ALJ explained that such a score "indicates serious symptoms or serious difficulty in social, occupational, or school functioning." AR 25. The ALJ noted that, in tandem with this GAF score, Dr. Wynne also determined that Plaintiff "could not remember and carry out basic written instructions and her concentration and ability to persist at simple work tasks were at least mildly impaired." AR 25. Additionally, the ALJ recounted Dr. Wynne's belief that Plaintiff "would have difficulty interacting with her coworkers and supervisors . . . [and] adapting [to] changes in the workplace." AR 25.

The ALJ concluded that Dr. Wynne's opinion "contrasts sharply with other evidence in the record and [Plaintiff's] demonstrated abilities." AR 26. He explained that although Dr. Wynne "determined that [Plaintiff] could not follow instructions . . . [Plaintiff] testified she had

---

[5] The Global Assessment of Functioning test is "widely used for scoring the severity of illness in psychiatry." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2880316/#B14 (last visited August 21, 2017). A GAF score of 48 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g. no friends, unable to keep a job)." *See* https://msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited August 21, 2017).

approximately 70 college credits." AR 25. Similarly, despite Dr. Wynne's finding that Plaintiff would have numerous difficulties in the workplace, the ALJ emphasized that Plaintiff "worked as a waitress" as a condition of her parole, and the job "require[d] the ability to handle money and interact with the public." AR 25-26. Based on these discrepancies, the ALJ accorded Dr. Wynne's opinion little weight.

*Dr. Eligio Padilla, Ph.D.*

The ALJ also assigned "little weight" to the opinion of consultative examining psychologist Eligio Padilla, Ph.D., who examined Plaintiff on February 16, 2012. AR 26. At the outset, the ALJ noted that Plaintiff had been referred to Dr. Padilla for the limited purpose of an IQ test. AR 26. In keeping with that referral, Dr. Padilla administered the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV") to Plaintiff. AR 26. Thereafter, Dr. Padilla calculated that Plaintiff's full scale IQ score was 69. AR 26. Based on that score, Dr. Padilla reasoned that Plaintiff "was functioning cognitively in the extremely low range of intellectual abilities, as measured by the WAIS-IV . . . [and] her overall thinking and reasoning abilities exceeded those of only approximately 2% of individuals her age." AR 26. Therefore, Dr. Padilla further opined that Plaintiff "was likely to experience great difficulty keeping up with her peers in a wide variety of situations that required thinking and reasoning abilities" and that Plaintiff's prognosis "was guarded, at best, and it was more likely poor." AR 26.

The ALJ accorded "little weight" to Dr. Padilla's opinion, as he found that the opinion again contrasted "sharply with other evidence in the record." AR 26. Specifically, the ALJ found Dr. Padilla's conclusions to be in conflict with Plaintiff's testimony "that she had completed 70 hours of college credits and that she was better at taking online classes than

participating in the classroom." AR 26. In the ALJ's opinion, this divergence rendered Dr. Padilla's opinion "less persuasive." AR 26.

*Dr. Richard Reed, Ph.D.*

Non-examining consulting psychologist Dr. Richard Reed, Ph.D., reviewed Plaintiff's medical file at the initial stage and completed both a "Psychiatric Review Technique" ("PRT") and Mental Residual Functional Capacity Assessment ("MRFCA") on February 23, 2012. AR 24. Among his various findings, the ALJ observed that Dr. Reed believed Plaintiff "could understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for 2 hours at a time, interact adequately with coworkers and supervisors, and respond appropriately to changes in a routine work setting." AR 24. Even so, Dr. Reed "noted that [Plaintiff's] anxiety issues might preclude her from working with the public," and that "she would likely do best with repetitive work and [ ] should probably not work with the general public." AR 24. The ALJ considered these findings, but stressed that Dr. Reed's conclusions "support a finding of 'not disabled.'" AR 24. Ultimately, the ALJ accorded Dr. Reed's opinion "great weight" as he found the opinion persuasive, and "well supported by explanation and by the medical evidence." AR 24.

*Dr. Jill Blacharsh, M.D.*

Dr. Jill Blacharsh, M.D., served as the second non-examining psychologist to review Plaintiff's file. AR 24-25. She completed her case analysis regarding Plaintiff's mental condition on October 18, 2012. AR 24. The ALJ noted that during Dr. Blacharsh's examination of the record at the reconsideration stage, "there were no new allegations . . . no updated sources[,] and only 1 new medical source of information." AR 24. Although the new source of information, Sage Neurosciences, indicated Plaintiff "was recently feeling overwhelmed by her

anxiety" and that Plaintiff "had been physically and emotionally abused by her significant other," the updated medical record nonetheless "appeared consistent with [Dr. Reed's] prior assessment and did not describe any significant decline in [Plaintiff's] mental function." AR 24. Therefore, Dr. Blacharsh also recommended a finding of nondisability, which the ALJ found "persuasive" as it was "well supported by explanation and by the medical evidence." AR 24-25. The ALJ closed by according Dr. Blacharsh's assessment "great weight."

At step four, the ALJ found that Plaintiff had no past relevant work. AR 27. Accordingly, the ALJ proceeded to step five. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 28. These jobs, as described by the VE, Pamela A. Bowman, included laundry sorter, Dictionary of Occupational Titles ("DOT")[6] #361.587-010, and office helper/file sorter, DOT #239.567-010. AR 28. Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied the claim. AR 29.

## V.    ANALYSIS

As set forth below, Plaintiff has failed to marshal sufficient support from facts or case law to establish that the ALJ applied incorrect legal standards or that his decision was unsupported by substantial evidence. Consequently, her Motion must be denied. The Court's reasoning as to each of Plaintiff's claims will be discussed *seriatim*.

### A.  The ALJ Properly Evaluated Plaintiff Under Listing 12.05

Plaintiff begins her attack on the ALJ's decision by claiming that the ALJ's evaluation of her learning disability at step three "is clearly erroneous and unsupported by substantial evidence

---

[6] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2016). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2016).

of record." Pl.'s Mot. 14.  She reasons that Dr. Padilla assessed her with a full scale IQ score of

69, and that this score, coupled with her severe impairments of anxiety, depression, and carpal

tunnel syndrome, qualify her as disabled under Listing 12.05(C).[7]  *Id.*  Furthermore, she contests

the ALJ's finding of insufficient evidence to support the onset of the learning disability prior to

the age of twenty-two, and argues instead that she "has satisfied her burden by providing

evidence which creates a presumption of intellectual disability onset prior to age 22."  *Id.* (citing

AR 300-03).

The Commissioner responds that Plaintiff does not satisfy the requirements for a *per se*

disabling intellectual impairment under Listing 12.05(C).  Def.'s Resp. 10.  She begins by noting

that "a claimant cannot meet or medically equal the listing based only on the requirements in

Section C – the claimant must *also* satisfy the capsule definition."  *Id.* at 9 (citations omitted)

(emphasis in original).  "Here," the Commissioner explains, "the ALJ found that Plaintiff did not

satisfy the capsule definition [ ], which requires significantly subaverage general intellectual

---

[7] At the time of the ALJ's decision, Listing 12.05 provided as follows:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

B. A valid verbal, performance, or full scale IQ of 59 or less; or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2014).

functioning with deficits in adaptive functioning initially manifested before age 22." *Id.* (citations omitted). As evidence of this fact, the Commissioner observes that "[w]ell after her 22nd birthday in 1999, Plaintiff attended college classes, worked part-time as a cashier at a restaurant, maintained a household, and served as the primary caregiver for her two young daughters." *Id.* The Commissioner further highlights that neither Dr. Reed nor Dr. Blacharsh, the two nonexamining psychologists, believed that Plaintiff met this Listing. *See id.* at 10. Moreover, she emphasizes that "no doctor diagnosed an intellectual disability (or mental retardation) in this case," including the two consultative psychologists and Plaintiff's two treating psychologists. *Id.* Strikingly, one of Plaintiff's treating psychologists, Dr. Joanne M. Black, "affirmatively said that one of Plaintiff's strengths was her intelligence." *Id.* (citing AR 277). On these bases, the Commissioner urges the Court to deny Plaintiff's claim.

Here, the Commissioner clearly prevails. At step three, the burden of presenting evidence to establish that a claimant's impairment meets or equals a Listing lies exclusively with the claimant. *See Fischer-Ross v. Barnhard*, 431 F.3d 729, 733 (10th Cir. 2005) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)). Although Plaintiff acknowledges her burden in briefing, she does little to satisfy it. Indeed, the only evidence proffered in support of her position is the report prepared by consulting psychologist Dr. Padilla on February 16, 2012. Pl.'s Mot. 14 (citing AR 300-03). But, Plaintiff was *thirty-four* at the time of Dr. Padilla's evaluation and report. AR 300. More importantly, Dr. Padilla explicitly refrained from diagnosing Plaintiff with mental retardation, as Plaintiff satisfied only one of three criteria required for the diagnosis. AR 303. This does little to support Plaintiff's argument that she meets the capsule definition of Listing 12.05(C), which requires evidence to support the onset of the Listing-level impairment prior to age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

12.05 (2014).  And, when viewed in the face of the persuasive counter-points presented by the Commissioner, *see supra*, pp. 16-17, Plaintiff's claim is rendered that much more inert.

Plaintiff failed before the ALJ to demonstrate that she was disabled under Listing 12.05(C).  Furthermore, nothing she has presented since that time has cured the fundamental weakness of that claim or evinced any error on the ALJ's part for having rejected it.  This Court finds no error in the ALJ's evaluation of Plaintiff under Listing 12.05(C) and therefore will deny this claim.

**B.      The ALJ Properly Evaluated the Opinions of Dr. Wynne and Dr. Padilla**

Plaintiff follows with a challenge to the ALJ's evaluation of both consultative examining psychologists' opinions.  The challenge is a narrow one, however, and alleges only that the ALJ's "stated rationale" for discounting the opinions "cannot constitute a legitimate reason for completely rejecting [their] opinion[s] in full."  Pl.'s Mot. 15.  Plaintiff reasons that an adverse credibility analysis "cannot constitute an adequate and legitimate basis for rejecting objective test results," and urges this Court to find legal error in the ALJ allegedly having predicated his findings on these grounds.

The Commissioner responds that "an ALJ may discount medical source opinions that are inconsistent with a claimant's activities as demonstrated in the record."  Def.'s Resp. 17 (citing *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013)).  In the instant matter, the Commissioner contends that "the ALJ reasonably found that other record evidence - including Plaintiff's own statements and the statements of her fiancée - indicated that Plaintiff had greater abilities than opined by Dr. Wynne and Dr. Padilla."  *Id.*  Thus, she believes "[t]he ALJ's findings are supported by substantial evidence," and that this Court should affirm the ALJ's decision.  *Id.*

Governing regulations require that an ALJ "will evaluate every medical opinion" received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c) (2016). The same regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2). Social Security Ruling ("SSR") 96-6p also provides guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Specifically, it directs that findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.* at *1. ALJs may not ignore these opinions and must explain the weight given to these opinions. *Id.* at *2. Yet, because opinions of consultative examiners are not accorded the same value as treating sources, SSR 96-6p mandates as follows:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

Based on relevant regulations and rulings, this Court finds no error in the ALJ's evaluation of the opinion of Dr. Wynne or Dr. Padilla. SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's opinion. In this case, the ALJ did exactly

that; he assigned little weight to both opinions and proceeded to articulate his reasons for doing so. AR 20. And this Court finds his opinions to be supported by substantial evidence.

Although Plaintiff takes exception with the ALJ's rationale for discounting these two opinions, her argument fails to persuade this Court. Plaintiff attempts to frame the ALJ's decision as one premised entirely on her credibility, but the plain text of the opinion belies that notion. When discussing Dr. Wynne's opinion, the ALJ explained that he assigned the opinion little weight "due to the fact that his opinion contrasts sharply with other evidence in the record and with [Plaintiff's] demonstrated abilities." AR 26. Then again, when discussing Dr. Padilla's opinion, the ALJ related that he was according the opinion "little weight due to the fact that his opinion contrasts sharply with other evidence in the record, and [Plaintiff's] testimony, which renders his opinion less persuasive." AR 26. Rather than grounding his evaluation on Plaintiff's credibility, the ALJ clearly obeyed the dictate of SSR 96-6p and considered the "supportability of the opinion in the evidence." *See* SSR 96-6p, 1996 WL 374180, at *2.

Whether the Court would have evaluated the opinions of Dr. Wynne and Dr. Padilla differently if it were reviewing the evidence de novo is not the question. The Court is constrained to reviewing whether the ALJ erred as a matter of law in its treatment of the opinions. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). It is the Court's role, however, only to determine if the ALJ properly explained his reasoning for assigning little weight to the opinions of Dr. Wynne and Dr. Padilla, both consultative examining psychologists. The Court finds that the ALJ properly considered both opinions, assigned each the weight he felt

it warranted, discounted each due to its incongruence with other evidence in the record, and satisfactorily explained his reasoning.  Consequently, the Court will deny this claim.

### C. The ALJ Did Not Violate the "Pick and Choose" Rule

As her third allegation of error, Plaintiff claims that the ALJ impermissibly omitted certain moderate limitations identified by non-examining consultative psychologist, Dr. Reed. Pl.'s Mot. 16-17.  She contends that, despite assigning Dr. Reed's opinion "great weight," the ALJ "failed to incorporate into [Plaintiff's] RFC the 'moderate' limitation[8] in understanding, remembering, and carrying out even simple instructions assessed by Dr. Reed."[9]  *Id.* (citing AR 79).  Plaintiff further reasons that the ALJ's "limitation to 'simple instructions' and 'jobs involving work primarily with things and not people' did not adequately convey Dr. Reed's limitations, which seriously impair [Plaintiff's] ability to execute even simple instructions and interact appropriately with the public."  *Id.* at 17 (internal emphasis omitted).  In so doing, Plaintiff asserts that the ALJ violated the "pick and choose" rule, which precludes an ALJ from picking and choosing "through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Id.*; *see Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  Lastly, she argues that the error was harmful, as both jobs identified by the VE have a reasoning level of two, which requires applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions."  Pl.'s Mot. 17 (citation omitted).

---

[8] The Court notes that Dr. Reed assigned moderate limitations to Plaintiff in both her ability to understand and remember detailed instructions as well as her ability to carry out very short and simple instructions.  AR 79. Notably, Dr. Reed also ascribed a *marked* limitation in Plaintiff's ability to carry out detailed instructions.  AR 79. Nevertheless, Plaintiff advances no allegation of error based on that assignment of a marked limitation, and as a consequence, any such argument is deemed waived.  *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").  Plaintiff's waiver is all the more salient given her election to forgo the filing of a reply brief.

[9] Plaintiff also describes her challenge as one to the opinion of Dr. Blacharsh, who ratified the findings of Dr. Reed. Dr. Blacharsh, however, did not complete a separate MRFCA for Plaintiff, as she felt it unnecessary.  Nevertheless, the Court is cognizant of the challenge to both opinions, and where this Court rules on Plaintiff's challenge regarding Dr. Reed, the parties may also consider it to encompass the opinion of Dr. Blacharsh.

The Commissioner responds that the "ALJ's mental RFC finding reasonably accounted for [the] opinions of Dr. Reed and Dr. Blacharsh, and was supported by substantial evidence in the record as a whole." Def.'s Resp. 19. She recounts that Dr. Reed provided a narrative statement on Plaintiff's functional abilities, wherein Dr. Reed "opined that Plaintiff would likely do best with repetitive work, and that she could understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for two hours at a time; and respond appropriately to changes in a routine work setting." *Id.* at 18 (citing AR 80). The Commissioner further notes that Dr. Reed believed Plaintiff "should not work with the public, but could interact adequately with co-workers and supervisors." *Id.* (citing AR 80). In the Commissioner's opinion, "the ALJ arrived at a similar assessment when he found that Plaintiff had the mental RFC to do simple, routine work that primarily involved things not people." *Id.* (citing AR 19). Thus, the Commissioner contends the ALJ did incorporate the moderate limitations identified by Dr. Reed into Plaintiff's RFC.

In 2007, the Tenth Circuit published two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's restrictions but rejected others. *See Haga*, 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the consultative examiner's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the consultative examiner's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). Since the time of the *Haga* opinion, the Court's holding that an "ALJ is not entitled to pick and choose through an uncontradicted medical

opinion, taking only the parts that are favorable to a finding of nondisability" has become known as the "pick and choose" rule. *Haga*, 482 F.3d at 1208.

More recent decisions of the Tenth Circuit have clarified the application of *Haga*, but none have overruled it. First, in 2015, the *Vigil* court held it is not always necessary for the ALJ to include specific limitations in the RFC for concentration, persistence and pace. *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015). In *Vigil*, the Tenth Circuit found that the ALJ adequately accounted for moderate limitations in concentration, persistence and pace by limiting the plaintiff to unskilled work. *Id.* It noted that unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work – *i.e.*, simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. *Id.* (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

In 2016, the *Smith* court ratified the *Vigil* court's holding that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil*, 805 F.3d at 1204). On appeal, the *Smith* court reviewed an ALJ's RFC determination based on a non-examining physician's assessment of nine nonexertional limitations that sounded in the categories of (1) sustained concentration and pace, (2) social interaction, and (3) adaptation. *Id.* at 1268. The physician, when reducing these limitations to her RFC narrative, omitted the majority of the nine and recommended instead that the claimant "could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ adopted the physician's recommendation, and found that the claimant "(1) could not engage

in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. "Through these findings," the Tenth Circuit held, "the [ALJ] incorporated the functional limitations of [the claimant's] moderate nonexertional limitations." *Id.* The *Smith* court reasoned that the "notations of moderate limitations served only to aid [the physician's] assessment of residual functional capacity." *Id.* at 1269 n.2. Correspondingly, the Tenth Circuit explained that the court's function is not to compare the ALJ's findings to a physician's "notations of moderate limitations," but rather, to compare the ALJ's findings to the physician's opinion. *Id.*

In the instant matter, the Court finds that the two moderate limitations at issue have been properly incorporated into Plaintiff's RFC. Just as in *Smith*, Dr. Reed chose to condense Plaintiff's moderate limitations in: (1) the ability to understand and remember detailed instructions, and (2) the ability to carry out very short and simple instructions into his MRFCA narrative, which stated:

> Claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. She would likely do best with repetitive work and should probably not work with the general public given her anxieties.

AR 80. The ALJ then integrated Dr. Reed's narrative into Plaintiff's RFC, which limited Plaintiff to light work with the following mental limitations:

> [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers and work situations; deal with routine changes in work setting, maintain concentration, persistence[,] and pace for up to and including 2 hours at a time with normal breaks throughout the work day. She is suitable for jobs involving work primarily with things and not people.

AR 19. Based on this transposition of Dr. Reed's notations of moderate limitations into his MRFCA narrative, and from that MRFCA narrative into Plaintiff's RFC, this Court can find no

foundation for Plaintiff's allegation of error. To the contrary, the above clearly evinces that the moderate limitations identified by Dr. Reed are indeed represented in Plaintiff's RFC, even if the verbage is not entirely synchronous. *See Chavez v. Colvin*, 54 F. App'x 374, 375 (10th Cir. 2016) (holding that an ALJ is not required to parrot a doctor's exact descriptions of a claimant's limitations) (unpublished).

As a final addendum to this claim, Plaintiff contends that the ALJ's finding regarding her RFC is incompatible with the two positions identified by the VE: laundry sorter, DOT #361.587-010, and office helper/file sorter, DOT #239.567-010. *See* Pl.'s Mot. 17; AR 28. Plaintiff claims that "both jobs identified by the VE have a reasoning level of two (R2), which requires [applying] commonsense understanding to carry out detailed but uninvolved written or oral instructions." Pl.'s Mot. 17 (internal quotation marks and citation omitted). Thus, she reasons, the ALJ's "limitation to 'simple instructions' and 'jobs involving work primarily with things and not people" did not adequately convey Dr. Reed's limitations, which seriously impair [Plaintiff's] ability to execute even simple instructions and interact appropriately with the public." *Id.* (internal emphasis omitted).

The Commissioner provides only a summary response. Generally, she notes that Plaintiff offers no legal authority to support her position. Def.'s Resp. 19 n.8. In addition, she observes that the "Tenth Circuit has rejected the argument that an RFC to simple work is inconsistent with a GED reasoning level of 2." *Id.* (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)).

At Plaintiff's administrative hearing, the VE identified the positions of laundry sorter and office helper/file sorter as conforming to Plaintiff's RFC, both of which require level two reasoning, defined as the ability to "[a]pply commonsense understanding to carry out detailed but

uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 361.587-010; 239.567-010, 1991 WL 672979 (1991). The DOT includes a General Education Development ("GED") Scale composed of three divisions: (1) reasoning development; (2) mathematical development; and (3) language development. *See* DICOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702 (1991). The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.*

In this case, the ALJ found Plaintiff could "understand, carry out, and remember simple instructions and make commensurate work related decisions . . . [and] is suitable for jobs involving work primarily with things and not people." AR 19. The Tenth Circuit concluded in *Hackett* that an RFC for "simple and routine work tasks" seemed "consistent" with level-two reasoning. *Hackett*, 395 F.3d at 1176. In this case, the limitation to "simple instructions" and "commensurate work related decisions" is nearly identical to the limitation in *Hackett*. Applying the principles in *Hackett* to the similar circumstances of this case, the Court finds no basis to sustain Plaintiff's allegation of error. For this and the additional reasons detailed above, the Court will deny this claim.

### D. The ALJ Did Not Violate the Treating Physician Rule

Plaintiff's penultimate claim alleges that the ALJ's evaluation of Dr. Wilson's opinion violated the treating physician rule in two respects. First, Plaintiff asserts that the ALJ "failed to perform the requisite 'controlling weight' analysis, instead collapsing the two-step inquiry into a single step." Pl.'s Mot. 18. Next, she claims the ALJ "further erred by failing to provide specific, legitimate reasons for rejecting the opinion of Dr. Wilson." *Id.* a 19. Rather, Plaintiff contends that the ALJ failed to analyze Dr. Wilson's opinion "in light of the six factors

contemplated by the regulations," and moreover, that he impermissibly discounted Dr. Wilson's opinion "by presuming that the report" was based solely on Plaintiff's subjective complaints. *Id.* (citing *Langley*, 373 F.3d at 1118; *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished)).

The Commissioner challenges Plaintiff's account and proffers various foundations for affirming the ALJ's decision. At the outset, she notes that in February 2014, "Dr. Wilson completed a checkmark-style form about Plaintiff's mental functioning, opining that she had marked limitations in seven areas of mental functioning, and moderate limitations in 13 areas." Def.'s Resp. 12 (internal quotation marks omitted). Throughout Plaintiff's administrative proceedings, however, the Commissioner highlights that Plaintiff never submitted Dr. Wilson's treatment notes to support the checkmark-style form.[10] *Id.* By the Commissioner's estimation, this formed a reasonable basis for discounting Dr. Wilson's opinion. *See id.* (citing AR 27). The Commissioner further argues that it was "entirely appropriate" for the ALJ to discount Dr. Wilson's opinion based on Plaintiff's subjective reports in "the absence of objective clinical findings to support his opinion." *Id.* at 13 (citations omitted). In addition, the Commissioner argues that the ALJ "reasonably found that Dr. Wilson's opinion was not consistent with other record evidence regarding Plaintiff's demonstrated abilities," and follows with an account of Plaintiff's abilities, including her employment history, college courses, and activities of daily living. *Id.* at 13-14. Lastly, she contests Plaintiff's assertion that the ALJ collapsed the required two-step inquiry governing the evaluation of Dr. Wilson's opinion, and additionally argues that the ALJ appropriately applied the six regulatory factors while assessing Dr. Wilson's opinion.

---

[10] On appeal, Plaintiff's counsel states that he obtained a release for the notes in question, but was informed by Dr. Wilson that no treatment notes exist. Pl.'s Mot. 19 n.22.

*See id.* at 15.  Thus, the Commissioner concludes, "there is substantial evidence to support the ALJ's findings," and "the Court should affirm."  *Id.*

### 1.  The treating physician rule

Under the treating physician rule, "the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not."  *Hackett,* 395 F.3d at 1173 (citing *Langley*, 373 F.3d at 1119).  *See* 20 C.F.R. § 404.1527(d)(2) (2016) (defining how the SSA uses medical source opinions, including treating sources, but reserving the final decision on residual functional capacity to the Commissioner); 20 C.F.R. § 416.927(d)(2) (2016) (same).  In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ considers whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is consistent with the other substantial evidence in the record.  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  "If the answer to both these questions is 'yes,' [the ALJ] must give the opinion controlling weight."  *Id.* (citation omitted).  If the opinion is deficient in either of these respects, however, it is not to be given controlling weight.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."  *Pisciotta*, 500 F.3d at 1077.  This inquiry is governed by its own set of factors, which include:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). While an ALJ must consider these factors, he need not expressly discuss each of them in his opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Rather, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (citing *Watkins,* 350 F.3d at 1300–01). Furthermore, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258. If this is not done, a remand is required. *Watkins*, 350 F.3d at 1300.

### 2. The ALJ did not misapply the treating physician rule

Plaintiff's allegation that the ALJ misapplied the treating physician rule finds no foundation in the record. Plaintiff contends that the ALJ '"collaps[ed] the two-step [controlling weight] inquiry into a single step," but offers zero facts in support. Pl.'s Mot. 18. Moreover, Plaintiff does not even describe for this Court precisely how he believes the ALJ collapsed the inquiry.

In contrast, the text of the ALJ's opinion demonstrates that he permissibly performed the controlling weight analysis. At the initial stage, the ALJ found Dr. Wilson's opinion "contrast[ed] sharply with other evidence in the record and with [Plaintiff's] demonstrated abilities." AR 27. *See Krauser,* 638 F.3d at 1330 (providing that in the "initial determination" of the treating physician analysis, "an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record . . . [but], [i]f the opinion is deficient in either of these respects, it is not to be given controlling weight") (internal citations omitted). Following that finding, the ALJ proceeded to step two, where he was required to "consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. At this latter step, the ALJ assigned Dr. Wilson's opinion a discounted weight, which caselaw commanded him to do in light of his finding that Dr. Wilson's opinion "contrast[ed] sharply with other evidence in the record[.]" AR 27; *see Krauser*, 638 F.3d at 1130; *Pisciotta*, 500 F.3d at 1077 (holding that where a treating physician's opinion is *either*: (1) unsupported by medically acceptable clinical or laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence in the record, the ALJ must *not* accord such an opinion controlling weight).

Plaintiff contends that at this second stage, the ALJ again erred by neglecting to provide specific, legitimate reasons for discounting Dr. Wilson's opinion. Pl.'s Mot. 19. But again, Plaintiff misunderstands the ALJ's responsibilities. As part of determining what lesser weight to assign to Dr. Wilson's opinion, the ALJ was required to consider the six *Watkins* factors, *see supra* pp. 28-29, although he was not bound to discuss each in his opinion. *See Oldham*, 509 F.3d at 1258. Of the six, he clearly discussed at least three, thereby complying with relevant

regulations. *See* SSR 06-3P, 2006 WL 2329939, at *5 ("Not every factor for weighing opinion evidence will apply in every case.").

First, the ALJ clearly discussed the length and frequency of Dr. Wilson's treatment relationship with Plaintiff (the first *Watkins* factor), going so far as to note not only that Dr. Wilson "started seeing [Plaintiff] on April 9, 2013," but also that "he saw her approximately twice a month." AR 26. The ALJ also scrutinized the degree to which Dr. Thompson's opinion was supported by relevant evidence (the third *Watkins* factor), observing that the extreme limitations identified by Dr. Wilson in his February 2014 checklist conflicted with the facts that Plaintiff: (1) had never been hospitalized; (2) had never experienced a period of decompensation; (3) cared for her two children; (4) was not living outside a supportive living arrangement; and (5) had demonstrated abilities that sharply contrasted with Dr. Wilson's opinion. AR 27. Lastly, the ALJ discussed Plaintiff's "unreliable reporting" as another factor brought to the ALJ's attention which tended to contradict the opinion (the sixth *Watkins* factor). AR 27. Based on the above, this Court finds the ALJ's reasoning for according Dr. Wilson's opinion no weight "sufficiently specific" to make clear to this Court and subsequent reviewers the weight he assigned and the reasons for that weight. *Oldham*, 509 F.3d at 1258. Consequently, the Court cannot find error in the ALJ's decision to discount Dr. Wilson's opinion.

Whether the Court would have evaluated Dr. Wilson's opinion differently if it were reviewing the evidence *de novo* is not the question. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Rather, the Court's role is confined to determining whether the

ALJ erred as a matter of law in her treatment of Dr. Wilson's opinion. Because the Court finds no such error, and moreover, because substantial evidence exists to support the ALJ's decision, Plaintiff's fourth allegation of error fails.

### E. The ALJ's Credibility Finding Is Supported by Substantial Evidence

In her last claim, Plaintiff asserts that the ALJ's adverse credibility finding is unsupported by substantial evidence. She complains that the finding fails to comport with the three-phase analysis set forth in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987), and more specifically, that the ALJ "did not perform" the third phase required by *Luna*. *See* Pl.'s Mot. 21. Plaintiff further contends that the ALJ did not articulate how her ADLs contradicted her allegations of mental impairment, and that the ALJ improperly relied on her general credibility to reject objective medical evidence of records. *See id.* at 22-24.

The Commissioner responds that "the ALJ identified a number of valid reasons for discounting Plaintiff's complaints," and these "were supported by substantial evidence." *Id.* at 20. As one example, she relates that "the ALJ found a number of inconsistencies between Plaintiff's complaints of disability" and the medical evidence, which she supports with numerous citations to the record. *Id.* at 20-21. The Commissioner similarly maintains that the ALJ identified various inconsistencies between Plaintiff's complaints of disability and the non-medical evidence, which she again supports with citations to the record. *Id.* at 21-22. She contests Plaintiff's *Luna* argument and responds that "the ALJ addressed a number of *Luna* factors, including attempts to find relief, regular contact with a doctor, and daily activities." *Id.* at 22 (citing *Luna*, 834 F.2d at 165-66). The Commissioner then closes by rebutting Plaintiff's claim that the ALJ relied improperly on Plaintiff's general credibility, arguing in the alternative

that even if the ALJ had not relied on Plaintiff's criminal history to shape her credibility finding, ample, unrelated evidence exists in the record to support the adverse finding.

### 1. Credibility evaluation standard

Before March 2016,[11] ALJs were required to consider the credibility of a claimant's subjective testimony about pain and other symptoms, and their effect on the claimant's ability to work, in crafting an RFC determination. *See Madron v. Astrue*, 311 F. App'x 170, 175 (10th Cir. Feb. 11, 2009) (unpublished) (citing SSR 96-7p, 1996 WL 374186, at *6 (July 2, 1996) (*superseded* by SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016)).[12] Precedent provided that "[c]redibility determinations are peculiarly the province of the finder of fact . . . [but], findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citation and internal quotation marks omitted)). Furthermore, reviewing courts were not to "upset such determinations when supported by substantial evidence." *Id.*

Under the pre-2016 framework, SSR 96-7p set out the proper two-step analysis of a claimant's subjective testimony. *See* SSR 96-7p, 1996 WL 374186, at *2. Under SSR 96-7p, the ALJ was tasked with considering whether there existed "an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, where the ALJ found such an underlying physical or mental impairment(s), he was then required to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms

---

[11] At the time of his decision, SSR 96-7p required that the ALJ assess the credibility of Plaintiff's statements about her symptoms. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7 has since been superseded by SSR 16-3p, which no longer requires a credibility assessment. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016) ("[W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").

[12] *See supra* note 11.

limit the individual's ability to do basic work activities."  *Id.*  In doing so, the ALJ could make a finding on the credibility of a claimant's statements regarding her symptoms based on the entire case record.  *Id.*

Alongside SSR 96-7p, the Code of Federal Regulations provided criteria, in addition to the medical evidence in the record, to assist an ALJ in determining whether a claimant's statements of his symptoms were credible.  20 C.F.R. § 404.1529(c) (2016).[13]  These "credibility factors" included:

> (i) a claimant's daily activities; (ii) the location, duration, frequency, and intensity of a claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of those symptoms; (vi) any measures taken to relieve the pain or other symptoms; and (vii) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* § 404.1529(c)(3).  Then, where disabling pain is alleged, the Tenth Circuit devised a framework for further analyzing a claimant's subjective testimony regarding pain.  These factors, known as the *Luna* factors, require an ALJ to consider:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing *Luna*, 834 F.2d at 163-64).

When an ALJ evaluates a claimant's subjective testimony, no formal factor-by-factor review of the evidence is required.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

---

[13] The text of 20 C.F.R. § 1529 has also been amended, with alterations to take effect March 27, 2017.  20 C.F.R. § 404.1529(c) (2017) (effective Mar. 27, 2017).

"So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the credibility determination is to be considered adequately supported.  *Id*.

## 2. The ALJ's credibility finding is adequately supported

Plaintiff's final claim, like those before it, also fails.  But, despite Plaintiff's best efforts to ground this claim on a reading of *Luna*, this claim neither rises nor falls based on its strictures. Indeed, the *Luna* factors exist to evaluate a claimant's allegations of disabling *pain*, not allegations of symptoms *writ large*.  *See Musgrave v. Sullivan,* 966 F.2d at 1375-76; *Luna*, 834 F.2d at 163-64.  In the instant matter, Plaintiff filed for disability benefits based on allegedly disabling *bipolar disorder*.  AR 187.  Although she did testify about her purported carpal tunnel syndrome at her administrative hearing, never did she claim that pain from that condition was disabling.  *See* AR 37-70.  When discussing the condition, she claimed that she had "shooting pains" and numbness in her arms since her pregnancies [AR 47] and that the condition was "pretty severe."  AR 55.  But, she never asserted during the administrative process, nor has she on appeal, that her carpal tunnel syndrome was disabling.  To the contrary, with the exception of this one misguided claim, her entire Motion focuses on reversing the ALJ's findings regarding her mental limitations.  Therefore, to the extent Plaintiff has erroneously advanced a *Luna* error, that allegation is dismissed.

As to the ALJ's credibility determination, the Court is mindful that "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)).  So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id.* at 910; *see also Qualls*, 206 F.3d at 1372.

In this case, the Court finds that the ALJ's credibility determination is substantiated by a thorough and well-documented consideration of the medical and other evidence before him. The ALJ gave specific, legitimate reasons for his assessment of Plaintiff's credibility (discussed at length above), each of which is closely and affirmatively linked to substantial evidence of record. *See* AR 19-22; *supra* pp. 8-10. *See also Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (holding that an ALJ's credibility determination must be closely and affirmatively linked to substantial record evidence). Even without consideration of Plaintiff's criminal history, the ALJ provided more than enough specific evidence beyond the facts of those convictions to warrant deference on appeal. Therefore, the Court will also deny this claim.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 18] **IS HEREBY DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **HEREBY AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**


_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*